1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8   THOMAS WEINSTEIN,

9              Plaintiffs,

10   vs.

11   MANDARICH LAW GROUP, LLP.

12              Defendant.

NO.  2:17-cv-01897-RSM

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

NOTE ON MOTION CALENDAR:

July 27, 2018

13

14

## I.   <u>INTRODUCTION</u>

15      When Thomas Weinstein was sued over a credit card debt, he immediately reached out to

16   Mandarich to arrange payment in full so that the lawsuit would not proceed.  Mr. Weinstein is not

17   legally-trained, and accordingly, relied on Mandarich's representations that everything would be

18   fine as long as he made payments.  While readily accepting Mr. Weinstein's payments, Mandarich

19   nevertheless obtained a default judgment – without any notice – for the full amount.  Thus, it came

20   as a shock to Mr. Weinstein when his wages were garnished in April 2017.

21      Now that Mr. Weinstein has called Mandarich to the mat, Mandarich takes a different

22   approach in this lawsuit, arguing that **<u>it should benefit from its own false statements</u>**.  This "ends

23   justify the means" approach to debt collection is exactly the kind of behavior that the FDCPA and

PLAINTIFFS' REPLY RE: PARTIAL SUMMARY JUDGMENT - 1
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    WCAA/CPA are designed to prevent.  Therefore, this court should grant summary judgment in

2    Mr. Weinstein's favor.

3                                    **II.      <u>REPLY</u>**

4           Mandarich appears to concede that it failed to give Mr. Weinstein notice of default as

5    required by law (because one year had passed since service), and that it failed to account for

6    payments that Mr. Weinstein made when it moved for default.  Therefore, Mandarich focuses

7    much of its brief on affirmative defenses, arguing that the results of its injurious behavior insulate

8    it from liability.  Mandarich then disregards binding Ninth Circuit precedent, continuing its "ends

9    justify the means" litigation tactics.  Mandarich has failed to meet its burden to establish the

10   elements of its affirmative defenses and has failed to create a genuine issue of material fact as to

11   liability; therefore, this Court should grant summary judgment in Plaintiff's favor.

12   **A.  <u>Mandarich Violated the FDCPA</u>**

13            ***1.   <u>Plaintiff's Claims are Not Barred by the Statute of Limitations</u>***

14          Claims under the FDCPA are subject to the "discovery rule" in which the limitations period

15   begins to run when the plaintiff knows or has reason to know of the injury forming the basis of the

16   action.  *Mangum v. Action Collection Servs., Inc.* 575 F. 3d 935 (9th Cir. 2009).  It is undisputed

17   that (A) Mr. Weinstein was unaware of the October 2015 default judgment and (B) that he first

18   subjectively learned of the default judgment in April 2017 from a wage garnishment.  Dkt. #25-2.

19          Mandarich first argues that Plaintiff's failure to monitor the litigation prevents tolling.

20   Second, it argues that because an attorney (who also objectively had no knowledge of the default)

21   once sent an e-mail to Mandarich, Mr. Weinstein is precluded from invoking the discovery rule.

22   Response at p. 6.  These arguments maintain the theme of Mandarich seeking reward for its own

23

1    malfeasance.  The fact remains that Mr. Weinstein's lack of knowledge about the default judgment

2    **is due to Mandarich's own actions**.

3            Mandarich's circular argument is that Plaintiff somehow had "reason to know" about the

4    default judgment before April 2017 – a situation caused by Mandarich's failure to notify Mr.

5    Weinstein of the default as required.  According to the Ninth Circuit, this is the quintessential

6    scenario for application of the discovery rule.  *See Lyons v. Michael & Associates*, 824 F.3d 1169,

7    1171 (9th Cir. 2016) ("the discovery rule seems particularly apropos where the very nature of the

8    deficiency alleged increases the likelihood that the violation would not be 'easily ascertainable' to

9    the debtor absent some other form of notice").

10           Mandarich admits that Mr. Weinstein was entitled to notice of the default under CR 55,

11   and Mandarich failed to provide him with notice.  Dkt. #25-2; Dkt. #25-1 at Ex. B at 107:16-

12   109:19, 128:4-18.  For reasons that remain unknown, nearly five months after Mandarich had

13   covertly obtained its default judgment, Mandarich mailed a copy of the collection lawsuit and the

14   case schedule to Mr. Weinstein.  Reply Declaration of T. Tyler Santiago ("*Santiago Reply Decl.*")

15   at ¶¶ 2-3, Ex. A and B.[1]  This communicated that the lawsuit was still pending.

16           In response to the mailing, an attorney e-mailed Mandarich on behalf of Mr. Weinstein in

17   March 2016, attaching the copy of the case schedule.  Dkt. #27-1 at p. 16.  In the e-mail, the

18   attorney indicated that Mr. Weinstein did not want to "spend time and money defending the

19   lawsuit," and that he would enter into a "stipulated judgment."  *Id.*  Plainly, the attorney had no

20   knowledge of the default judgment, otherwise there would have been no discussion about

21   defending the case and no offer to enter into a stipulated judgment.  In the face of these comments,

22

23

---

[1] Mandarich attempted to modify its interrogatory answer at the 30(b)(6) deposition but failed to offer specifics and never amended its responses.

1   Mandarich did not e-mail the attorney, send a letter, or even leave a message with Mr. Weinstein's

2   attorney to correct the misapprehension or to inform him of the default judgment. Dkt. #27-2 at ¶

3   15. (In any event, Mr. Weinstein was unaware of the default judgment until April 2017.) Dkt.

4   #25-2 at ¶ 12.

5          Indeed, the only evidence provided by Mandarich underscores the fact that Mr. Weinstein

6   did not know about the default judgment. Mandarich's actions – such as sending a case schedule

7   for a case already reduced to judgment, continuing to take payments, and refusing to respond to

8   the attorney's inquiry – only reinforced Mr. Weinstein's ignorance of the default judgment. No

9   reasonable person in Mr. Weinstein's position would have had the slightest clue that Mandarich

10  had broken its word and obtained a default judgment illegally.

11         Perhaps most disturbingly, from October 2014 until at least February 2017, Mandarich sent

12  letters to Mr. Weinstein stating that pursuant to the "agreement," Mandarich would debit money

13  from his account. Dkt. # 25-2 at ¶ 14, Ex. C, Dkt. #25-1 at Ex. C, 55:6-56:20, *Santiago Reply*

14  *Decl.* at ¶ 4, Ex. C. By sending correspondence that made it appear as though it was honoring the

15  settlement agreement, Mandarich actively furthered a situation in which Mr. Weinstein remained

16  unaware of the default judgment.

17         Mandarich has failed to meet its burden to establish the elements of its affirmative

18  defense. The only material evidence before this Court is Mr. Weinstein's sworn and

19  uncontradicted testimony that he was unaware of the default judgment until he was garnished in

20  April 2017. Dkt. #25-2. This case was removed to this Court in December 2017, thus Mr.

21  Weinstein's FDCPA claims are timely.[2]

22

23  ───────────
    [2]   Furthermore, even assuming the absence of the discovery rule, Mandarich's conduct constitutes a
    "continuing violation," as Mandarich's unlawful actions all are direct consequences of their unlawfully-
    acquired default judgment. *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1160 (N.D. Cal.
    Sept. 12, 2003) (a suit is timely if the action is filed within one year of the most recent date on which the

1

## 2. *Plaintiff's Claims are Not Barred by Res Judicata*

2   As a threshold matter, Plaintiff moves to strike Defendant's assertion of *res judicata*, raised

3   for the first time in its response brief.  Neither Defendant's Answer nor its Amended Affirmative

4   Defenses contain any mention of a *res judicata* affirmative defense, as required by Fed. R. Civ. P.

5   12.[3]  Dkt. #6, Dkt. #10.

6   Assuming Mandarich is permitted to raise an unpleaded defense several months beyond

7   the amended pleadings deadline, its defense also fails on the merits.  In short, Mandarich attempts

8   the same defective *res judicata* defense roundly rejected by federal courts – namely that the ill-

9   gotten default judgment (which adjudicated whether the debt was owed) somehow prevents claims

10  concerning Mandarich's collection activities – and it should be rejected here, as well.

11  The FDCPA concerns **how** a debt is collected, not whether a debt is owed.  By extension,

12  the same can be said of the Washington Collection Agency Act ("WCAA") as enforced through

13  the Consumer Protection Act ("CPA").  The FDCPA is a strict-liability statute, holding "debt

14  collectors liable for various 'abusive, deceptive, and unfair debt collection practices' regardless of

15  whether the debt is valid." *Schroyer v. Frankel*, 197 F.3d 1170 (6th Cir. 1999) (citing *McCartney*

16  *v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

17  "Res judicata[4] occurs when a prior judgment has a concurrence of identity in four respects

18  with a subsequent action.  There must be identity of (1) subject matter; (2) cause of action; (3)

19

20  _____
    defendant is alleged to have violated the FDCPA and there is a pattern and course of conduct).  The course
21  of conduct here involves all actions taken with respect to the default judgment, including the garnishment
    in April 2017.

22  [3] Somewhat ironically, in the same brief raising *res judicata* for the first time, Mandarich simultaneously
    asserts that a party may not raise a claim for the first time at summary judgment that was not raised in
23  pleadings.  Response at p. 12.

    [4] *See Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (state law regarding res judicata applies to
    state court judgments).

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1  persons and parties; and (4) the quality of the persons for or against whom the claim is

2  made." *Rains v. State,* 100 Wn.2d 660, 665 (1983) (citation omitted).  This is not met here.  First,

3  the subject matter and the causes of action are completely different.  The state court collection

4  lawsuit (brought by Defendant) was about whether Mr. Weinstein owed a debt (breach of contract),

5  while this case is about **how** Defendants collected the debt (FDCPA and WCAA).  Second, the

6  parties are different.

7      Under Washington law, a prior judgment does not preclude a later action unless, among

8  other requirements, the two cases involve identical causes of action.  *Williams v. Leone & Keeble,*

9  *Inc.*, 171 Wn.2d 726, 730 (2011).  While *res judicata* generally bars claims "which could or should

10  have been litigated" in the prior case, claims that were not required to be joined in the first action

11  are not precluded.  *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 331 (1997) (citing CR 18);

12  *see also Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 226 (1978) (while *res judicata*

13  generally bars claims "which could or should have been litigated" in the prior case, "this statement

14  must not be understood to mean that a plaintiff must join every cause of action which is joinable

15  when he brings a suit against a given defendant").

16      Federal courts have rejected application of *res judicata* in analogous circumstances arising

17  under the FDCPA.[5]  *See, e.g., Dibb v. Allianceone Receivables Mgmt., Inc.*, 2015 WL 8970778, at

18  *9 (W.D. Wash. Dec. 16, 2015) (holding plaintiff's FDCPA, WCAA, and CPA claims were not

19  barred by *res judicata* and certifying a Rule 23(b)(3) class); *Buford v. Palisades Collection, LLC*,

20  552 F. Supp. 2d 800, 806-08 (N.D. Ill. 2008) (finding plaintiffs' FDCPA claim challenging

21

22

23

---

[5] The WCAA "is our state's counterpart to the FDCPA."  *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53 (2009).  While the FDCPA and the WCAA differ in some respects, there is a great deal of similarity, along with a large body of federal jurisprudence addressing the FDCPA.  Therefore, decisions concerning the FDCPA can be illustrative.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1  defendants' practice of filing suit on time-barred debts was not precluded, notwithstanding entry

2  of default judgments in the underlying collection actions; rejecting defendants' claim that "identity

3  of causes of action" existed).  These cases have held that a consumer may sue for a debt collector's

4  conduct, even if the debt (and any wrongful fees or interest) was ultimately reduced to a default

5  judgment.

6        Just because a debt collector obtains a default judgment does not mean that the debt

7  collector's violations of law during the collection process are washed away via res judicata

8  (especially when the default and the amount were falsely obtained).  In *Sprinkle v. SB&C Ltd.*, 472

9  F. Supp. 2d 1235, 1243 (W.D. Wash. 2006), the court held that a plaintiff's claims were not

10  precluded based on Washington res judicata law:

11      The ultimate issue of fact in the present matter is not the judgment itself, but rather,
the debt collection practices that led to that judgment.  Thus, no identity of issues

12      exists.  Furthermore, Defendants have not ushered any facts supporting the
contention that the garnishment procedures and unlawful collection arguments

13      made under the FDCPA, WCAA and WCPA were finally adjudicated by the state
court.

14  *Id*.  (citation omitted).

15        Perhaps most notably, Plaintiff never had a chance to assert anything in the state court

16  matter, because Mandarich served the lawsuit, then surreptitiously filed the case, then obtained a

17  default judgment, all without Mr. Weinstein knowing.  Mandarich may not benefit from its own

18  misconduct, and res judicata does not apply on these facts.

19        **3.**   ***Defendant Has No Bona Fide Error Defense***

20        Despite Plaintiff outlining the parameters and elements of the bona fide error defense in

21  his opening brief, Mandarich both ignores the legal standards and provides insufficient evidence.

22  Dkt #25 at p. 12.

23

1    Mandarich treats the bona fide error defense too casually, essentially attempting to lodge a

2    "Schroedinger's defense"[6] – *i.e.* a defense that both does and does not apply, depending on external

3    conditions.  Mandarich must select an argument: it either (A) violated the FDCPA (thus meeting

4    the first element of the defense) or (B) it did not violate the FDCPA (thus not requiring the

5    defense).  Mandarich bears the burden of proof, which it cannot meet if it cannot commit to

6    whether or not a violation occurred.  Mandarich largely claims that the error <u>was</u> the violation (if

7    there was a violation).  This is insufficient and Mandarich's defense fails on summary judgment.

8    As best Plaintiff can understand, Mandarich appears to identify two (or perhaps three)

9    errors while simultaneously denying that any errors or violations occurred.  First, Mandarich

10   casually mentions, without any further support or argument, that the computer failed to populate

11   the proper information.  Response at p. 15.  Second, Mandarich appears to argue that Mr. Vos

12   made two mistakes: (1) He failed to provide Mr. Weinstein with notice of the default motion, and

13   second, (2) He did not catch the computer's failure to credit Mr. Weinstein with payments.

14   Assuming these "errors" nevertheless satisfy the second element of the defense, Mandarich wholly

15   fails to satisfy the third element.

16   As to the third element: "[A] showing of 'procedures reasonably adapted to avoid any such

17   error' must require more than a mere assertion to that effect.  <u>The procedures themselves must be

18   explained, along with the manner in which they were adapted to avoid the error</u>."  *Reichert*, 531

19   F.3d at 1007 (citation omitted) (emphasis added).  Mandarich claims "it is not known why the

20   computer failed to properly populate" the information.  Response at 15.  No argument is made as

21   to any "procedure" designed to avoid this computer error, and Mandarich admitted that it has no

22

23

---

[6] A phrase borrowed, likely poorly, from the famous physics thought-experiment "Schroedinger's cat," expressing two simultaneous (but contradictory) states of being.

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1  idea why the error occurred, thus making it impossible for Mandarich to identify a procedure

2  designed to prevent it from happening.

3    Mr. Vos' "procedure," which is just a review of documents that CR 11 and ethical rules

4  already obligate him to do, is patently unreasonable.  One person, Mr. Vos, who oversees eight or

5  nine attorneys, maintains lawsuits for Mandarich under his bar license in five different states

6  (including Washington where Mandarich files thousands of collection lawsuits), and apparently

7  acts as the sole gatekeeper to make sure every single legal document is accurate before it leaves

8  the office.  Dkt. #25-1, Ex. C, 10:15-18, 11:16-35, 13:7-17; Dkt. # 17-1 at ¶¶ 9-10, Ex. C.  This

9  "procedure" such that it is, is not reasonably adapted to avoid errors.[7]  For these reasons,

10  Mandarich may not invoke the bona fide error defense.

11      **4.  _Defendant's False Statement as to the Amount Owed Violated the FDCPA_**

12    Mandarich admits it obtained a judgment for more than was owed, but claims there is no

13  FDCPA violation because no "representation" was made to Mr. Weinstein.  However, this is not

14  the law.

15    As the Ninth Circuit explained in _Tourgeman_, a plaintiff may bring FDCPA claims <u>even</u>

16  <u>where he did not receive the debt collection letters</u>, because the FDCPA's "broad regulatory

17  purpose is effectuated by measuring the lawfulness of a debt collector's conduct not by its impact

18  on the particular consumer who happens to bring a lawsuit, but rather on its likely effect on the

19  most vulnerable consumers—the hypothetical "least sophisticated debtor"—in the marketplace."

20  _Tourgeman v. Collins Fin. Servs., Inc.,_ 755 F.3d 1109 (9th Cir. 2014).  Here, Mr. Weinstein **should**

21

22

23

---

[7] It is apparent from the record that this "procedure" is not working, as Mandarich (and Mr. Vos) have been sanctioned and/or admonished multiple times for making misrepresentations when moving for default judgment.  Dkt. #17-1 at ¶¶ 12-13, Ex. D and E.

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

**have been** provided with the motion for default under CR 55, thus a misrepresentation was made (i.e. that default was proper), and liability follows. *Id.*

Defendant appears to make no argument as to § 1692f because it would be impossible to argue that obtaining a judgment for more than what was allegedly owed is not unfair and unconscionable. Therefore, this court should grant summary judgment in Plaintiff's favor.

### 5. *Defendant's Failure to Give Notice of Default Violated the FDCPA*

Mandarich again makes no argument as to Plaintiff's 15 U.S.C. § 1692f claim regarding the failure to give notice of default to Mr. Weinstein. It is, of course, unfair and unconscionable to obtain a default judgment while collecting a debt without informing the other party, despite a legal requirement to do so. Thus, this Court should grant summary judgment in Plaintiff's favor on that claim.

Mandarich does take issue with Plaintiff's 15 U.S.C. § 1692e claim, stating that Mr. Weinstein was not entitled to notice of the default because he did not appear in the case. However, as explained in Plaintiff's motion for summary judgment, Plaintiff was entitled to notice under Washington's liberal appearance rules, where simply showing up after litigation has commenced has always constituted an appearance. Dkt. #25 at pp. 8-9.

Mandarich then argues that while it was required to give Mr. Weinstein notice of default because over a year had passed pursuant to CR 55(f)(1), such behavior does not violate the FDCPA no representation was made. Response at. p. 11. To the contrary, Mandarich made a representation that a default was appropriate, when the law stated otherwise. Such representation is actionable, regardless of Mr. Weinstein's subjective knowledgeof the representation (especially here, when he **should have been made aware**). *See Tourgeman*, 755 F.3d 1109. Mandarich may not argue

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

that Mr. Weinstein cannot bring a claim because he did not know about the misrepresentation, as
Mandarich created and perpetuated Mr. Weinstein's lack of knowledge.[8]

### 6. *Defendant Was on Notice as to Plaintiff's 15 U.S.C. 1692e(5) and e(10) Claims*

Plaintiff served Defendant with a highly detailed complaint asserting violations of 15
U.S.C. § 1692e, including supporting facts.  Dkt. #1-1 at ¶¶ 5-37.  Defendant makes the absurd
argument that these claims are brought for the first time in summary judgment.  Response at pp.
11-12.  It is unclear how the Defendant could be "surprised" by Plaintiff moving for summary
judgment on the very statute and facts alleged in the complaint. Dkt. #1-1 at ¶ 5-37.

## B. Defendant Violated the WCAA

Defendant takes issue with the Plaintiff's proof of the elements of the Consumer Protection
Act.  Under *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986), a
CPA plaintiff must establish five elements: (1) an unfair or deceptive practice, (2) occurring in
trade or commerce, (3) which affects the public interest, (4) an injury to the plaintiff's business or
property, (5) that the injury was caused by the unfair or deceptive practice.    A WCAA violation
satisfies the first two elements (unfair or deceptive practice and occurring in trade or commerce).
*Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53 (2009).  A violation of the WCAA
has since been definitively determined to satisfy the third element, "public interest impact," as
well.  *Id.* at 54 (With respect to the WCAA and CPA, "the business of debt collection affects the
public interest…").  All that remains is whether there was injury, and whether it was caused by
Defendant's deceptive or unfair practice.  Here, Mandarich garnished Mr. Weinstein's wages as a
result of the ill-gotten default, thus the final two elements are satisfied.  Dkt. #25-2 ¶ 15.

---

[8] Mandarich even goes so far as to blame the state court for entering default, which was based on
Mandarich's representations.  Response at p. 10, n.5 ("The state court was clearly on notice that more than
one (1) year had elapsed…")

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Finally and most remarkably, Mandarich argues that it is exempt from the WCAA/CPA because it is a law firm.  However, the Western District of Washington has routinely held that lawyers are only exempt from WCAA liability **when they are collecting their own debts**.  *See Lang v. Daniel N. Gordon, PC*, 2011 U.S. Dist. LEXIS 1727, 2011 WL 62141 (W.D. Wash. Jan. 6, 2011); *Semper v. JBC Legal Group*, Case No. C04-2240RSL, 2005 U.S. Dist. LEXIS 33591 (W.D. Wash. Sept. 6, 2005); *Mclain v. Daniel N. Gordon, PC*, Case No. C09-5362BHS, 2010 U.S. Dist. LEXIS 86794 (W.D. Wash. August 24, 2010); *Mandelas v. Daniel N. Gordon, PC*, Case No. C10-0594JLR, 2010 U.S. Dist. LEXIS 76100 (W.D. Wash. June 28, 2010); *LeClair v. Suttell & Assocs., P.S.*, Case No. C09-1047JCC, 2010 U.S. Dist. LEXIS 8309 (W.D. Wash. Jan. 29, 2010).  The WCAA does not categorically exempt lawyers from liability.  Mandarich has admitted, under oath, the only thing it does is collect debts, and it was not collecting debts for itself in this case.  Dkt. #25-1, Ex. C. 14:1-8.  Therefore, this Court should grant summary judgment in favor of Plaintiff.

Dated this 27th day of July, 2018.

**ANDERSON SANTIAGO, PLLC**

By:  /s/ T. Tyler Santiago
T. Tyler Santiago, WSBA No. 46004
Attorney for Plaintiff
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

1

## **Certificate of Service**

2     I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the

3     Court using the CM/ECF system which will send notification of such filing to the following:

4

5     Nicole M. Strickler
      Messer Strickler, LTD
6     225 West Washington, Suite 575
      Chicago, IL 60602
7

8

9                                    /s/ T. Tyler Santiago
                                    T. Tyler Santiago
10

11

12

13

14

15

16

17

18

19

20

21

22

23

CERTIFICATE OF SERVICE - 1
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719