The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

THOMAS WEINSTEIN,

    Plaintiffs,

vs.

MANDARICH LAW GROUP, LLP.

    Defendant.

NO. 2:17-cv-01897-RSM

**PLAINTIFF'S TRIAL BRIEF**

## I.     INTRODUCTION

Defendant Mandarich Law Group's actions in this case are the very reason the Fair Debt Collection Practices Act and the Washington Collection Agency Act exist: to protect people from overzealous collection efforts. Thomas Weinstein did everything a dutiful person would do when he received a lawsuit from Mandarich Law Group, LLP ("Mandarich"), including paying Mandarich in order to stop the lawsuit. Even though Mr. Weinstein did everything asked of him, Mandarich reneged on its own deal (behind Mr. Weinstein's back), causing Mr. Weinstein to owe even more money, have his wages garnished, as well as encumbering Mr. Weinstein with an improper default judgment. As a result, Mr. Weinstein has needlessly suffered for over three years.

Making matters worse, Mandarich has done *nothing* to assist Mr. Weinstein with the problem or otherwise minimize his damages. With the stroke of a pen, Mandarich could vacate

PLAINTIFF'S TRIAL BRIEF - 1
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

its ill-gotten default judgment. With the stroke of a pen, Mandarich could refund the money it improperly garnished from Mr. Weinstein's wages. With the stroke of a pen, Mandarich could say it was sorry for interjecting itself into Mr. Weinstein's personal life for so many years. Mandarich has done none of this, instead maintaining – to this day – that its actions were either proper or harmless, and that Mr. Weinstein is to blame for Mandarich's actions. *See generally* Defendant's Motion for Summary Judgment (Dkt. #31).

## II. BACKGROUND

In September 2014, Thomas Weinstein was served with a debt-collection lawsuit by Mandarich and immediately placed a phone call to "make this right." Dkt. # 31-1, Ex. A at p. 5. As a result of Mr. Weinstein's efforts, the parties quickly settled the case in October 2014, and the agreement was further confirmed by a letter from Mandarich. Dkt. #35. at p. 2. Pursuant to the agreement, Mr. Weinstein would make an up-front payment of $302.81, and monthly payments of $97.33 until the alleged debt was paid on February 27, 2017. Dkt. #25-2, Ex. A at p. 1. One year later, in October 2015, without informing Mr. Weinstein, Mandarich obtained a default judgment in King County Superior Court in the amount of $3,558.05 (now inflated due to attorney's fees and costs) with post-judgment interest at 12% per annum, and which also conveniently failed to credit Mr. Weinstein for any of the payments that he made for over one year. Dkt. #35 at p. 3. Meanwhile, Mandarich continued to process payments and send Mr. Weinstein letters acknowledging the agreement that had been made and that Mr. Weinstein was complying with the agreement. *Id.*

In April 2017, Mandarich started garnishing Mr. Weinstein's wages, which was the first notice Mr. Weinstein received that a default judgment had been entered against him. Dkt. #35 at p. 4. As an individual without legal training, Mr. Weinstein believed that after the April

PLAINTIFF'S TRIAL BRIEF - 2
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

garnishment finished that he would be done with Mandarich once and for all. Dkt. #25-2 at ¶ 15. He was wrong, as Mandarich again tried to garnish his wages in October 2017. *Id.* at ¶ 16. At this point, Mr. Weinstein knew he had no option but to seek counsel, and this lawsuit followed.

In November 2018, this Court ruled that the aforementioned conduct violated multiple sections of the FDCPA, including 15 U.S.C. 1692 §§ 1692e, e(2), e(5), e(10), 15 U.S.C. § 1692f and (f)1. Dkt. #35. Additionally, this Court ruled that Defendant violated RCW 19.16.250(21) by obtaining the judgment and taking actions to enforce it. *Id.* The only remaining issue before this Court is the amount of damages that Mr. Weinstein has suffered as a result of Mandarich's violations, and Mr. Weinstein's damages are significant.

### III. <u>LEGAL AUTHORITY</u>

#### A. <u>Plaintiff is Entitled to Damages Under the FDCPA – 15 U.S.C. § 1692k</u>

"A debt collector who fails to comply with any provision of the FDCPA is liable to a debtor in amount equal to the sum of any actual damage sustained by such person as a result of such failure, additional damages as the court may allow, but not exceeding $1,000, and the costs of the action together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k. Here, this Court found that Defendant violated the FDCPA in numerous ways, therefore damages are appropriate consistent with § 1692k. Dkt. #35.

##### i. <u>Statutory Damages</u>

Plaintiff seeks the maximum amount of statutory damages allowable under the FDCPA, which is $1,000.00. Mandarich violated numerous provisions of the FDCPA on numerous occasions with multiple, discrete actions. When numerous violations of the FDCPA are predicated upon one set of circumstances, the number of violations *should* be considered and it is best

PLAINTIFF'S TRIAL BRIEF - 3
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

considered during the calculation of damages, rather than awarding $1,000.00 per violation. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006).

Here, the number of violations alone justify a maximum statutory damage award, as this Court ruled that Mandarich Law Group violated §§ 1692e, e(2), e(5), e(10), 15 U.S.C. § 1692f and f(1) on multiple occasions, and noted that the violations were "significant." Dkt. # 35 at p. 6. The consequences of Mandarich's violations also justify a maximum statutory award, as will be seen through the testimony of Mr. Weinstein and his wife, Allison Weinstein.

Plaintiff expects Defendant to spend significant time arguing against the maximum statutory damages based on the language of 15 U.S.C. § 1692k(b). The statute calls for consideration of, "**among other relevant factors**," the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b) (emphasis added). Here, the frequency of noncompliance is high, as can be seen through the sheer number of violations, and the persistence of noncompliance in this case is perpetual.

Mandarich took money from Mr. Weinstein based on a settlement agreement – an agreement that it induced by a collection lawsuit but did not honor – in the amount of $1,957.42. Then, it obtained a surreptitious judgment and subsequently garnished Mr. Weinstein's wages in the amount of $1,468.94. Despite the fact that these combined amounts exceeded Mandarich's original lawsuit (and the parties' settlement agreement), Mandarich attempted a second garnishment. Mandarich has not returned either the money garnished, or the money received in payments, **and has made no move to modify or extinguish the ill-gotten default judgment**. The fact that Mandarich has kept the funds taken from Mr. Weinstein, and that it unapologetically

PLAINTIFF'S TRIAL BRIEF - 4
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

maintains its ill-gotten default (which continues to accrue interest) is evidence that its noncompliance is intentional.

      ii. **Actual Damages**

         a. **Payments Made to Mandarich Law Group Pursuant to Settlement**

Mandarich entered into an agreement with Mr. Weinstein that it did not honor. Instead, Mandarich went behind his back and obtained a judgment, despite its statement that it would stop litigation if Mr. Weinstein complied with the payment agreement. Dkt. # 31-1, Ex. A at p. 8. Since Mandarich breached Mr. Weinstein's trust, and the agreement, Mandarich should have to return the money that it received in payments for violating the FDCPA. Plaintiff respectfully requests that this Court also assess interest in the amount of 12%, starting at the last time money was taken from Mr. Weinstein in March 2016. RCW 4.56 et seq.

         b. **Emotional Distress**

As this Court stated, emotional distress damages are available in this case. Dkt. #35 at p. 8. Emotional distress damages are recoverable as actual damages under the FDCPA. 15 U.S.C. § 1692k; *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011); *Riley v. Giguiere,* 631 F.Supp.2d 1295, 1315 (E.D.Cal.2009) (citing cases); *Anunciation v. W. Capital Fin. Servs. Corp.*, 97 F.3d 1458 (9th Cir. 1996). It is anticipated that Mandarich will (incorrectly) argue that because Mr. Weinstein did not see a physician or mental health professional, that somehow damages are unavailable. This is not the law.

The Ninth Circuit has stated that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in ... the Ninth Circuit, or the Supreme Court." *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1040 (9th Cir. 2003). A plaintiff's testimony alone is enough to support emotional distress damages. *See Healey v. Trans Union LLC*, No. C09-0956JLR, 2011 WL 1900149, at *11 (W.D. Wash. May 18, 2011); *Riley v.* 631

PLAINTIFF'S TRIAL BRIEF - 5
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

F.Supp.2d 1315 (E.D.Cal.2009) (citing cases); *Zhang,* 339 F.3d 1020, 1040 (9th Cir. 2003); *Chalmers v. City of Los Angeles,* 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional distress damages based upon plaintiff's testimony); *Johnson v. Hale,* 13 F.3d 1351, 1352 (9th Cir. 1994) (emotional distress damages can be awarded based upon testimony or appropriate inference from the circumstances); *Nelson v. Equifax Information Services,* 522 F.Supp.2d 1222, 1235 (C.D.Cal. 2007) (a plaintiff's testimony can sufficiently establish emotional distress damages in an FDCPA action).

Here, Plaintiff seeks what is commonly referred to as "garden-variety" emotional distress damages and will rely not only on his testimony, but also the testimony of his wife, to prove such damages. They will testify – among other things – to Mr. Weinstein's emotional distress related to the aggressive collection efforts, the surprise judgment, the surprise garnishment, the uncertainty as to what will happen in the future because Mandarich has maintained its ill-gotten judgment, and Mr. Weinstein's fear that the garnishments would affect his upward mobility at his employer.

Mandarich's actions caused Mr. Weinstein to modify his wedding and housing plans (it is also a matter of judicial notice that a King County Superior Court judgment is an automatic lien, which would impair the Weinsteins' ability to purchase a home, pursuant to RCW 4.56.200(2)). Mr. Weinstein has had to deal with Mandarich, its misinformation, and bad conduct for over three years, and despite a ruling that it is liable for violating state and federal laws for obtaining a default judgment, Mandarich maintains its ill-gotten judgment, forcing Mr. Weinstein to continue to worry and to research solutions.

Based on Mandarich's existing briefing, Plaintiff expects Mandarich to attempt to minimize the effect that its actions have had on Mr. Weinstein, and to take the position that what happened "wasn't that bad." However, FDCPA cases routinely result in significant awards to

PLAINTIFF'S TRIAL BRIEF - 6
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

individuals who have suffered as a result of debt collector malfeasance. For example, in *McCollough*, the Ninth Circuit upheld a $250,000.00 emotional distress award to a debtor on FDCPA claim when a debt collector improperly sought attorney's fees and sent false requests for admissions to a debtor. 637 F.3d 939 (9th Cir. 2011). An award of $85,000.00 in emotional distress damages due to debt collections agency's violation of FDCPA was upheld when violations of the FDCPA had occurred over several months. *Nelson v. Equifax Services, LLC,* 522 F.Supp.2d 1222, 1239 (C.D.Cal. 2007). Here, Mr. Weinstein has had to deal with, and continues to have to deal with Mandarich, as it refuses to make even a token attempt to erase the damage that it has caused.[12]

Admittedly, emotional distress damages are difficult to measure, but Plaintiff finds a daily assessment of emotional distress as in *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2016 WL 337221, at *7 (W.D. Wash. Jan. 28, 2016) to be instructive. In *Lucero,* a plaintiff fell behind on her mortgage payments, and hired an attorney to help her navigate the foreclosure and mediation process. *Id.* The plaintiff was able to negotiate a loan modification, bringing the account current. *Id.* Unfortunately, the defendant loan servicer continued to report her loan as delinquent despite the modification. *Id.* She brought a lawsuit regarding violations of credit reporting obligations. *Id.* Over the course of several months, the mortgage servicer sent the plaintiff letters that stated

---

[1] There are numerous examples of significant emotional distress awards in FDCPA cases. *See Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008) (awarding consumer $90,000 for emotional distress caused by a debt collector); *Moriaski v. Davenport, Allen, & Malone, Inc.,* No. 2:09-CV-0298 MCE DAD, 2010 WL 3341566, at *6 (E.D. Cal. Aug. 23, 2010) (recommending award of $73,000 in actual damages due to emotional distress); *Panchaisl v. Gurney,* No. 04-04479 JF, 2007 WL 738642 (N.D. Cal. Mar. 8, 2007) (court award on default of $60,000 for emotional distress); *Brablec v. Paul Coleman & Assocs., P.C.*, No. CIV. S-08-1843MCEGGH, 2010 WL 235062 (E.D. Cal. Jan. 21, 2010) (awarding consumer $25,000 in actual damages due to emotional distress stemming from FDCPA violations).

[2] This court recently heard a case in which an alleged debtor was awarded $150,000 for non-economic damages for FDCPA violations committed by a debt collector. *See* Exhibit A.

PLAINTIFF'S TRIAL BRIEF - 7
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

attorney's fees were being charged to her account and statements that demanded payment of thousands of dollars in attorney's fees and costs. *Id.* It was later discovered that the loan servicer was adding the attorney's fees and costs of defending the lawsuit related to the violations of credit reporting obligations to her mortgage balance. *Id.* The Court awarded $500.00 per day in emotional distress damages over the course of a total of 195 days, as well as various other amounts and damages.

This case is similar, and in some ways, Mr. Weinstein is in a worse position than the plaintiff in the *Lucero* case. As in *Lucero*, Mr. Weinstein acted as responsibly as he could; he reached out to the creditor when he allegedly failed to pay money that was owed. Similar to *Lucero*, Mr. Weinstein made his payments regularly and on time. Also as in *Lucero*, Mr. Weinstein was continually assessed additional monetary charges well above what was owed. Mandarich, following in the footsteps of the defendant/collector in *Lucero*, continually sent letters containing misinformation and misrepresentations. However, unlike *Lucero*, where the debtor had the benefit of counsel, Mr. Weinstein could not afford an attorney to help him navigate the issues presented. Despite the fact that Ms. Lucero was represented by counsel to help her navigate the case, the court still felt it appropriate to award Ms. Lucero emotional distress damages commensurate with her experiences at the hands of the defendant.

In this case, Mr. Weinstein has already testified that he was very surprised by the April 2017 garnishment, and did not know what to do, as he felt frustrated and hopeless. Dkt. #25-2 at ¶¶ 12, 15. As a nonlawyer, he thought that the garnishment would be the end of the collection efforts. *Id.* at ¶ 15. However, in October 2017, Mandarich again attempted to garnish his wages. *Id.* at ¶ 16. At that point, he felt scared for his family's financial future, because Mandarich had already taken more from him that was originally agreed. *Id.* It is at that point, on or about October

PLAINTIFF'S TRIAL BRIEF - 8
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

20, 2017 that a more significant period of Mr. Weinstein's emotional distress damages commenced. He thought he had done everything right, he had already paid more than the original amount that he settled, and Mandarich was still seeking an additional $1,347.43, while interest continued to accrue. Complaint at Ex. F, p. 1. The ill-gotten judgment is still in effect today and continues to accrue interest.

While, again, there is no fixed metric by which to assess emotional distress damages, Mr. Weinstein asserts that the *Lucero* case is similar in both the fact pattern and the type of emotional distress which occurred, and that its assessment of damages at $500.00 per day is an adequate reflection of the type of damages that occur to blameless individuals who are simply trying to do the right thing in the face of a defendant's misconduct when collecting money. Based on the *Lucero* standard, Mr. Weinstein requests a daily assessment of emotional distress starting from October 20, 2017 to the day that this Court enters an order. Additionally, Mr. Weinstein requests an assessment of emotional distress damages for the shock of the events which began in April 2017.

### iii. Costs of Suit, Together with a Reasonable Attorney's Fee

In a successful action to enforce FDCPA liability, a debt collector who fails to comply with any provision of the FDCPA is liable to a debtor for the costs of the action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1692k(a)(3). Here, Plaintiff was successful in his action to enforce FDCPA liability and is thus entitled to attorney's fees and costs. Plaintiff requests that this Court state, as part of its judgment, that Plaintiff is entitled to such fees and costs to be determined through a petition to be filed at the completion of trial.

### B. Plaintiff is Entitled to Damages Under the WCAA/CPA – RCW 19.16.440 and RCW 19.86

PLAINTIFF'S TRIAL BRIEF - 9
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

The WCAA is enforced through the CPA, and any person who is injured in his business or property by a violation of the CPA may bring a civil action to recover the actual damages sustained by him. RCW 19.16.440, RCW 19.86.090. Here, the Court ruled that Mandarich violated RCW 19.16.250(21) by attempting to collect more than what was owed in its motion for default judgment, and that "all actions taken in furtherance of the improper Default Judgment are violations of RCW 19.16.250(21)." Dkt. #35. Therefore, Plaintiff is entitled to actual damages under the WCAA and CPA.

### i. **Actual Damages**

#### a. **Out-of-Pocket Costs**

The CPA addresses "injuries" rather than "damages" to support a CPA violation, and quantifiable monetary loss is not required for liability. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53 (2009). Simply consulting an attorney is sufficient to show injury. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412 (2014) (*citing Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 62 (2009)). In other words, to borrow from a contractual idiom, "a mere peppercorn will suffice" to show injuries. While Mr. Weinstein has testified in this case that he had to pay for parking and gas when meeting with his attorney to determine his legal rights and responsibilities (Dkt #31-1 at p. 76), he will not seek these of pocket costs at trial as he does not know the exact amounts.

#### b. **The Amounts Garnished by Mandarich Law Group**

Mandarich obtained a judgment in this case for an amount that he demonstrably did not owe. Then, in April 2017, Mandarich began garnishment proceedings against Mr. Weinstein's wages in the amount of $1,468.94. This Court has ruled that "all actions taken in furtherance of the improper Default Judgment are violations of RCW 19.16.250(21)." Thus, Mandarich violated

PLAINTIFF'S TRIAL BRIEF - 10
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

the WCAA when it garnished Mr. Weinstein in April 2017. As stated above, Mandarich has made no move to return the funds that it garnished based on a judgment that was obtained through unfair and deceptive practices. RCW 19.86.020, RCW 19.16.440. Mr. Weinstein was therefore injured and damaged in the amount of $1,468.94. Plaintiff respectfully requests that this Court also assess interest in the amount of 12%, starting at the time the money was taken from Mr. Weinstein in July 2017. RCW 4.56 et seq.

### c. The Cost to Vacate Mandarich's Ill-Gotten Default Judgment

As stated above, despite the fact that the judgment was obtained by misrepresentation and in violation of court rules, for reasons which remain unknown, Mandarich has failed to vacate its default judgment. Mr. Weinstein therefore has no other choice but to (1) hire an attorney to begin the process of obtaining an order to show cause, (2) serve process on Mandarich and Mandarich's client (which is now defunct due to filing bankruptcy), (3) file a motion to vacate the default, and (4) have counsel appear and argue the motion in court. *See* Washington Civil Rule 60. Mr. Weinstein has consulted an attorney regarding the price of such an endeavor and will testify regarding such cost.

### ii. Treble Damages

Under RCW 19.86.090, a court may in its discretion increase the award of damages to an amount not to exceed three times the actual damages sustained provided that such increased damage award for a violation may not exceed [$25,000]. *Mason v. Mortg. Am., Inc.*, 114 Wn. 2d 842, 855 (1990) (the statute has since been amended to increase the treble damages limit). These treble damages are "designed to punish the defendant and deter further violations." *Keyes v. Bollinger,* 31 Wn. App. 286, 297 n.2 (1982).

PLAINTIFF'S TRIAL BRIEF - 11
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Over the course of its dealings with Mr. Weinstein, Mandarich has made numerous false and misleading statements, has engaged in unfair, deceptive, and unconscionable conduct, and **keeps harming Mr. Weinstein**. By maintaining its ill-gotten judgment and refusing to return Mr. Weinstein's money, Mandarich appears to be extracting its pound of flesh simply because Mr. Weinstein, after years of abuse, finally stood up for himself. This is not the first time Mandarich has failed to follow the rules regarding default judgments. Plaintiff presented this evidence on summary judgment. Dkt. #30 at. p. 9, n.7 (citing Dkt. #17-1 at ¶¶ 12-13, Ex. D and E). This evidence consists of four King County Superior Court orders related to Mandarich failing to follow the rules related to default and default judgment. *Id.* Relevant quotes include:

- "The court has previously notified [Mandarich]…of the deficiencies in their motions for default, deficiencies have repeatedly included inadequate and incorrect notice of motion." Dkt. #17-1, Ex.D at p.3.

- "…the Court is aware that there is a pattern and practice of [Mandarich] failing to comply with the local rules regarding motions for default in other cases." Dkt. #17-1, Ex. D, at p. 21 and p. 24.

- [Mandarich] presented to the court's Ex Parte Department a proposed Order of Default and Default judgment which included a finding that the defendants "have failed to appear, answer, or otherwise defend within the time provided by law. This statement is also false…" Dkt. #17-1, Ex. E at p. 2.[3]

Because of Mandarich's egregious violations of the law in this case, and its history of failing to follow the rules when it comes to Washington debtors, Plaintiff respectfully requests that this Court treble Mr. Weinstein's actual damages to effectuate the purposes of the CPA and to punish and deter Mandarich from engaging in this type of activity in the future.

   iii.     <u>**Costs of Suit, Including a Reasonable Attorney's Fee**</u>

---

[3] It is worth noting that these orders occurred on December 15, 2015, January 22, 2016, February 18, 2016, and June 1, 2016, around the same time period that Mandarich obtained a default judgment against Mr. Weinstein.

PLAINTIFF'S TRIAL BRIEF - 12
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Any person who is injured in his business or property by a violation of the CPA may bring a civil action to recover actual damages, together with the cost of suit, including a reasonable attorney's fee. RCW 19.86.090. Here, Plaintiff was successful in his action to enforce a WCAA violation through the CPA and is thus entitled to attorney's fees and costs. Plaintiff requests that this Court state, as part of its judgment, that Plaintiff is entitled to such fees and costs to be determined through a petition to be filed at the completion of trial.

## IV. CONCLUSION

Consistent with the above, Plaintiff respectfully requests that this Court award the Plaintiff the following:

- The maximum amount of in statutory damages ($1,000) under the FDCPA.
- The amount of $1,957.42 for payments made to Mandarich on an agreement that it did not honor, plus 12% interest from the date of last payment to the date of trial.
- Emotional distress damages under the FDCPA:
    - In an amount to be determined by this Court at trial for emotional distress suffered pursuant to the surprise garnishment of April 2017.
    - In an amount to be determined by this Court at trial for emotional distress suffered pursuant to the surprise garnishment of October 2017, and a daily assessment of emotional distress damages from the time of the October garnishment attempt to the date of trial, as Mandarich continues to maintain its ill-gotten default judgment.
- Costs of suit together with reasonable attorney's fees under the FDCPA.
- Actual damages under the WCAA/CPA in the amount of $1,468.94 for the amounts garnished via Mandarich's ill-gotten default judgment, plus 12% from July 2017 to the date of trial.
- Actual damages under the WCAA/CPA for the cost to hire an attorney to vacate the default judgment.
- Treble damages, for all actual damages awarded under the WCAA/CPA.
- Costs of suit, including a reasonable attorney's fee under the WCAA/CPA.

PLAINTIFF'S TRIAL BRIEF - 13
2:17-CV-01897-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Dated this 9th day of January, 2019.

**ANDERSON SANTIAGO, PLLC**

By: /s/ T. Tyler Santiago
Jason D. Anderson, WSBA No. 38014
T. Tyler Santiago, WSBA No. 46004
Attorney for Plaintiff
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

PLAINTIFF'S TRIAL BRIEF - 14
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

**Certificate of Service**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nicole M. Strickler
Messer Strickler, LTD
225 West Washington, Suite 575
Chicago, IL 60602

  /s/ T. Tyler Santiago
T. Tyler Santiago

CERTIFICATE OF SERVICE - 1
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719